UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JANE DOE, and individual,<br><br>                    Plaintiff,<br><br>v.<br><br>MOUNTAIN VIEW HOSPITAL, LLC, a limited liability company; IDAHO FALLS COMMUNITY HOSPITAL, LLC, a limited liability company,<br><br>                    Defendants. | Case No. 4:24-cv-00360-DKG<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are Plaintiff's Motion for Leave to Amend and for Reconsideration, and a Motion to Intervene filed by former Defendants Brandon Bloxham and Justin Thompson. (Dkt. 35, 42). The motions are fully briefed and at issue. Having reviewed the submissions and entire record, the Court finds the facts and legal arguments are adequately presented and that oral argument would not significantly aid its decision-making process and, therefore, the motions will be decided on the record. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons set forth below, the Court will deny the Motion for Leave to Amend and for Reconsideration, and will grant the Motion to Intervene.

## BACKGROUND

This lawsuit arises out of events occurring while Plaintiff was employed by Mountain View Hospital, LLC ("MVH") and/or Idaho Falls Community Hospital, LLC ("IFCH") (collectively referred to herein as "entity Defendants"), which Plaintiff alleges were joint employers, a single employer, or an integrated enterprise. (Dkt. 30 ¶¶ 8, 10). Plaintiff alleges the entity Defendants were hostile to her requests for accommodations and time off to attend doctors' appointments. On April 18, 2023, Plaintiff met with MVH/IFCH's Human Resources Department (HR) to discuss options for taking medical leave to address her physical and mental health issues. (Dkt. 30 ¶ 25). During the meeting, Plaintiff explained her symptoms and reasons for needing to take time off, including the pain caused by her cochlear implant (CI) which she told HR made her want to "dig the CI out of [her] head with an icepick or shoot [herself] in the head." (Dkt. 30 ¶ 26). Discussion was had between the two about Plaintiff meeting with a therapist or counselor. At some point, HR contacted law enforcement and insisted that Plaintiff go to the IFCH emergency room for a psychiatric hold. Plaintiff initially resisted, but ultimately agreed to go to IFCH to receive care and treatment for the side effects of the CI, alleging she felt she had no other choice given the actions and persistence of her employer demanding that she do so. (Dkt. 30 ¶¶ 28, 32). While at IFCH, Plaintiff alleges that she was treated or her treatment was supervised by Brandon Bloxham, D.O. and Justin Thompson, D.O., both of whom were physicians at IFCH but were not employed by either of the entity Defendants. (Dkt. 1 ¶¶ 8, 9; Dkt. 35, Ex. 2).

The events that followed involved Plaintiff being involuntarily placed in a psychiatric hold until the afternoon of April 19, 2023. During these events, Plaintiff alleges that she denied being suicidal, requested but was not allowed to see her own medical providers, and that several other wrongful actions were taken against her. Eventually, Plaintiff was unable to return to work at MVH/IFCH, and her last day of employment was May 23, 2023. (Dkt. 30 ¶¶ 60, 61). As a result of the foregoing, on August 9, 2024, Plaintiff initiated this action by filing a Complaint raising claims of employment related disability discrimination, failure to accommodate, and retaliation against the entity Defendants under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*., the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq*., and the Idaho Human Rights Act (IHRA), Idaho Code § 67-5901, *et seq*.; and state law claims of negligence, false imprisonment, and infliction of emotional distress against the entity Defendants, Bloxham, and Thompson. (Dkt. 1).

On June 6, 2025, the Court entered an Order on Defendants' Motions to Dismiss, granting dismissal in part as to the employment related claims in Counts One, Two, and Three, without prejudice and with leave to amend. (Dkt. 29). The state tort claims, Counts Four through Eight, were dismissed in their entirety without prejudice to being filed in state court, and with no leave to amend. On July 7, 2025, Plaintiff filed an Amended Complaint, which the entity Defendants answered on July 28, 2025. (Dkt. 30, 33). On August 14, 2025, Plaintiff filed the instant Motion for Leave to Amend and for Reconsideration of the dismissal of the state tort claims. (Dkt. 35). On September 15,

2025, Bloxham and Thompson filed the pending Motion to Intervene for the limited purpose of opposing Plaintiff's Motion. (Dkt. 42).[1] The Court finds as follows.

## DISCUSSION

### 1. Motion to Intervene

Bloxham and Thompson (collectively "proposed intervenors") request to intervene in this action under Rule 24 for the limited purpose of opposing Plaintiff's motion for leave to amend and reconsideration. (Dkt. 42, 46). They argue intervention is proper as a matter of right or, alternatively, permissively. Plaintiff opposes the motion on both grounds, generally arguing the proposed intervenors have no protectable interest in the subject matter of the litigation at this time and that they have not shown the requirements for either form of intervention. (Dkt. 45). The entity Defendants do not oppose intervention. (Dkt. 44). For the reasons that follow, the Court will grant the motion to intervene and will consider the proposed memorandum submitted by Bloxham and Thompson. (Dkt. 42-1).[2]

### A.    Legal Standard

The Federal Rules of Civil Procedure permit intervention as of right under Rule 24(a) and permissively under Rule 24(b). *Cooper v. Newsom*, 13 F.4th 857, 864 (9th Cir.

---

[1] Bloxham and Thompson were named as individual defendants in the initial Complaint only for the state law tort claims. Because the state law tort claims were dismissed, both individuals are not presently a party to this action. (Dkt. 29).

[2] No response to the intervenors' proposed memorandum is needed, as the record is sufficiently complete and Plaintiff is not prejudiced because her briefing on the motion to amend addressed the arguments raised in the intervenors' proposed memorandum, including the reply brief filed after the motion to intervene. (Dkt. 35, 43).

2021). Intervention as of right requires: "(1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit." *United States v. Idaho*, 342 F.R.D. 144, 148 (D. Idaho 2022) (quoting *Animal Legal Def. Fund v. Otter*, 300 F.R.D. 461, 464 (D. Idaho 2014)). "In evaluating whether these requirements are met, courts are guided primarily by practical and equitable considerations." *Callahan v. Brookdale Senior Living Cmty., Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022) (internal quotation marks and citation omitted). Rule 24(a) is construed "broadly in favor of proposed intervenors." *Id.* Still, applicants seeking intervention bear the burden of proving the requirements are met. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). "Failure to satisfy any one of the requirements is fatal to the application." *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

By contrast, Rule 24(b) allows permissive intervention where the applicant "has a claim or defense that shares with the main action a common question of law or fact," and the request is timely. Fed. R. Civ. P. 24(b). In exercising its discretion on a motion for permissive intervention, the court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Cooper*, 13 F.4th at 868 (quoting

*Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998)). "The court may also consider other factors in the exercise of its discretion, including 'the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties.'" *Perry*, 587 F.3d at 955 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)).

   **B.    Analysis**

   Preliminarily, the Court finds that limited intervention, such as that requested here, is permissible in the Ninth Circuit. *Raymond v. Sloan*, 2014 WL 4215378, at *4 (D. Idaho Aug. 25, 2014) (granting permissive intervention for the limited purpose of joining defendants' motion to dismiss and opposing plaintiff's motion to amend); *Moore v. Verizon Comms. Inc.*, 2013 WL 450365, at *4 (N.D. Cal. Feb. 5, 2013) (citing cases). Plaintiff's arguments to the contrary are unavailing. (Dkt. 45).

   Turning to the requirements of Rule 24(a)(2) and Rule 24(b)(1)(B), the Court finds Bloxham and Thompson have established that intervention for the limited purpose of opposing Plaintiff's motion to amend and for reconsideration is appropriate in this case for the reasons stated below.[3]

   **i.    Intervention as of Right**

   The requirements for intervention as a matter of right have been established. First, the motion is timely, as it was filed within a reasonable time after Plaintiff's motion and before the reply was filed, and no prejudice related to the timing of the motion has been

---

[3] Bloxham and Thompson are granted leave to intervene only for purposes of opposing Plaintiff's motion to amend and for reconsideration. Given the Court's ruling on that motion stated herein, Bloxham and Thompson are not parties to this action and their status as intervenors is concluded as of the filing of this Order.

asserted by any party. *Orange County v. Air Cal.*, 799 F.2d 535, 537 (9th Cir. 1996) (listing timeliness factors). Indeed, Plaintiff does not dispute timeliness at all. (Dkt. 45).

Second, Bloxham and Thompson have established a "significantly protectable" interest. A proposed intervenor "has a significant protectable interest if the interest is protected by law and there is a relationship between that interest and the claim or claims at issue." *Cooper*, 13 F.4th at 865. The new claim that Plaintiff seeks to add and the dismissed claims that Plaintiff asks to be reconsidered, each name the proposed intervenors as defendants in this case, thus returning them as parties in this litigation after having been previously dismissed.[4] The proposed intervenors plainly have a legally cognizable interest in whether these claims will be allowed to proceed in this case against them. Further, Bloxham and Thompson have a clear and strong interest in any reconsideration of the dismissal of the state tort claims upon which they previously prevailed completely. (Dkt. 29).

Third, Bloxham and Thompson are situated such that the disposition of Plaintiff's motion will, as a practical matter, impair or impede their ability to protect their interest because the claims Plaintiff seeks to add or renew directly implicate both proposed intervenors. Consequently, if the claims are allowed, the proposed intervenors will be drawn back into this litigation and be required to again defend themselves in this action, including against claims that have been previously dismissed.

---

[4] Because the applications seek only limited intervention to oppose the motion to amend and to reconsider, the Court has analyzed their protectable interests as to the proposed new claim and reconsideration of the dismissed claims.

**ORDER - 7**

Finally, Bloxham and Thompson's interests are not adequately represented by the existing parties in the lawsuit. "The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 840 (9th Cir. 2022) (citation omitted). To evaluate the adequacy of representation, courts consider: "'(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.'" *Id*. at 840–41 (quoting *Citzs. for Balanced Use*, 647 F.3d at 898).

Here, while there are similarities, the entity Defendants' arguments and defenses to the proposed new and renewed claims are distinct from those of the proposed intervenors, and their respective interests are different. MVH and IFCH were allegedly Plaintiff's employer at the time of the events and have been named as entities in this case. Bloxham and Thompson, on the other hand, are private physicians who Plaintiff seeks to sue in their individual capacities and who have their own defenses and arguments to the proposed claims that the entity Defendants may not raise. The differing status and alleged involvement of the entity Defendants and proposed intervenors give rise to different interests, defenses, and arguments. For instance, the entity Defendants argue that neither of the proposed intervenors were employed by MVH or IFCH and did not act on behalf of either entity and, therefore, the entities cannot be held liable under Section 1983 for the decisions or actions of the proposed intervenors. (Dkt. 39 at 17-18).  For their part,

**ORDER - 8**

the proposed intervenors contend they are not liable under Section 1983 because they each individually maintain that they had no involvement in placing Plaintiff on a temporary, involuntary mental health hold. (Dkt. 42-1, Ex. A, B). The Court finds these distinctions satisfy the minimal showing to establish that the proposed intervenors interests are not adequately protected by the existing parties.

Based on the foregoing, the Court finds Bloxham and Thompson have established the requirements for intervention as of right.

### ii.    Permissive Intervention

Alternatively, the Court finds Bloxham and Thompson have established the requirements for permissive intervention under Rule 24(b)(1)(B). *See e.g., Raymond*, 2014 WL 4215378, at *4. The timely and limited intervention sought here is to allow Bloxham and Thompson to oppose Plaintiff's motion to amend to add a new claim and to reconsider dismissal of state tort claims. (Dkt. 42). The proposed new Section 1983 claim and the dismissed state tort claims allege that Bloxham and Thompson are individually liable for actions and injuries relevant to Plaintiff's involuntary commitment. As discussed above, the proposed intervenors' arguments and defenses to the claims sought to be brought against them share common questions of law and fact relevant to the case, including their alleged actions, if any, relevant to Plaintiff's involuntary commitment.

Moreover, allowing intervention will not cause delay or undue prejudice to the adjudication of the parties' rights given the circumstances presented here. This litigation is in the early phases, discovery is ongoing, and dispositive motions are not due until October 20, 2026. (Dkt. 38). There is no undue prejudice to the existing parties by

**ORDER - 9**

allowing intervention, as the interests in judicial economy and fairness favor deciding Plaintiff's motion with the input of all the parties and individuals directly impacted by the proposed new and renewed claims. Fed. R. Civ. P. 1. Indeed, deciding the motion in the absence of the proposed intervenors would be wholly inequitable under the circumstances here where Bloxham and Thompson were previously named as defendants; prevailed in dismissing all of the claims against them; they now face the possibility of being again named as defendants in the new and renewed claims sought to be added by Plaintiff, which directly implicate both individuals; and their interests are not adequately represented by the existing parties. For these reasons, the Court finds Bloxham and Thompson have established the requirements for permissive intervention.

## 2. Motion to Amend

On this motion, Plaintiff requests leave to file a second amended complaint to add a new claim under Section 1983. (Dkt. 35). The entity Defendants and intervenors oppose the motion arguing the proposed amendment is futile, untimely, and otherwise unwarranted. (Dkt. 39, 42-1).[5]

### A.    Legal Standard

Under Federal Rule of Civil Procedure 15(a)(2), district courts should freely grant leave to amend pleadings when justice so requires. The policy favoring leave to amend under Rule 15 is applied with "extreme liberality." *Sonoma Cnty. Ass'n of Retired*

---

[5] The entity Defendants and intervenors further argue that Plaintiff has failed to name as a necessary party in this litigation the individual who signed the form to initiate the involuntary commitment. (Dkt. 39, 42-1). The Court need not address this argument, given the ruling stated herein.

*Employees v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013). "However, a district court has discretion to deny leave to amend when there are 'countervailing considerations' such as 'undue delay, prejudice, bad faith, or futility.'" *Center for Biological Diversity v. United States Forest Service*, 80 F.4th 943, 956 (9th Cir. 2023) (quoting *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1117 (9th Cir. 2015)).

"[T]he consideration of prejudice to the opposing party carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). However, "[f]utility alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004); *see also Townsend v. Univ. of Alaska*, 543 F.3d 478, 485 (9th Cir. 2008) ("Leave to amend need not be granted ... where the amendment would be futile."). But, "[d]elay alone does not provide sufficient grounds for denying leave to amend." *Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981).

Whether to grant or deny a motion to amend is within the district court's discretion, but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (internal citations and quotations omitted); *see also Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011). "Absent prejudice, or a strong showing of any of the

remaining *Foman* factors there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also Sonoma Cnty.*, 708 F.3d at 1117 (Courts may decline to grant leave to amend only if there is strong evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.") (quoting *Foman*, 371 U.S. at 182). The party opposing amendment bears the heavy burden of overcoming this presumption. *New York Life Insur. Co. v. Gunwall*, 675 F.Supp.3d 1126, 1136 (W.D. Wash. 2023) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987)).

### B.    Analysis

The proposed Section 1983 claim alleges IFCH, Bloxham, and Thompson violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments based on their actions or involvement with her involuntarily commitment. (Dkt. 35, Ex. 2). The entity Defendants and intervenors argue the motion to amend should be denied, primarily, because the proposed Section 1983 claim is futile. (Dkt. 39, 42-1).

Title 42 U.S.C. Section 1983 provides a cause of action for alleged deprivations of constitutional or federal law committed by persons acting under color of state law. 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege two elements: "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Here, IFCH,

Bloxham, and Thompson argue Plaintiff has not alleged or established the second element – that they were state actors or acted under color of state law. (Dkt. 39, 42-1).

The "under color of state law" and "state action" inquiries are the same. *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020). "The traditional definition of acting under color of state law requires that the defendant in a [Section] 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 48 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "To constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the State...or by a person for whom the State is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id*. at 49 (internal quotation marks and citation omitted).

The "[s]tate action analysis begins with 'identifying the specific conduct of which the plaintiff complains.'" *Ochoa v. Public Consulting Grp., Inc.*, 48 F.4th 1102, 1108 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999)); *see also Rawson*, 975 F.3d at 747. Here, the proposed Section 1983 claim seeks to hold IFCH, Bloxham, and Thompson liable for alleged actions related to Plaintiff's involuntary mental health commitment on April 18, 2023. (Dkt. 35, Ex. 2 ¶¶ 119-132). Plaintiff argues her involuntary commitment was without any basis, without a valid court order, and without following the legally required state procedure for mental health commitments. (Dkt. 35, Ex. 2 ¶¶ 51, 56-58, 60-61). Plaintiff further alleges Bloxham, "providers," and "ER staff" refused to let her leave, refused to lift the hold, and failed to treat her physical medical

**ORDER - 13**

complaints. (Dkt. 35, Ex. 2 ¶¶ 41-42, 46, 49-50, 55, 61). The conduct at issue involves only private actors.

For Section 1983 claims, courts "start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). This is so because "Section 1983 does not provide a remedy for purely private conduct that is not fairly attributable to the state, 'no matter how unfair that conduct may be.'" *Webster Canyon View Hosp.*, 2022 WL 1912077, at *2 (D. Idaho June 3, 2022) (quoting *Nat. Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)); *see also Price v. State of Hawai'i*, 939 F.2d 702, 707-708 (9th Cir. 1991) (finding private entities and parties are not ordinarily considered state actors for constitutional purposes.). "Private hospitals, physicians, and other treatment providers are not generally considered state actors amenable to suit under Section 1983." *Webster*, 2022 WL 1912077, at *2 (citing cases); *see also Morrison v. Clinic*, 703 F.Supp.3d 1245, 1251 (D. Mont. 2023); *compare Probst v. Adams Cnty. Sheriff Dept.*, 2021 WL 1554064, at *3 (D. Idaho April 19, 2021) (discussing cases where private hospitals or medical providers have been found to be state actors). Similarly, private hospitals and physicians are not state actors merely because they are subject to state regulation. *Chudacoff*, 649 F.3d at 1149 (recognizing the mere fact that a private hospital or physicians are "subject to state regulation does not by itself convert its action into that of the State," absent a sufficiently close nexus between the challenged action and the state).

However, a private party's conduct may be considered state action if their conduct is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 923

(1982). To make this determination, courts apply a two-step framework composed of the following: (1) the state policy requirement and (2) the state actor requirement. *Id.*

At the first step, the state policy requirement, the plaintiff must show the alleged deprivation was "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Id* at 937. The parties and intervenors here do not expressly address the state policy requirement. (Dkt. 35, 39, 42, 43). The Court has carefully reviewed the submissions and the entire record, and provides the following analysis of step one. *Children's Health Defense v. Meta Platforms, Inc.*, 112 F.4th 742, 754 (9th Cir. 2024) (requiring both steps); *O'Handley v. Weber*, 62 F.4th 1145, 1157 (9th Cir. 2023) (observing cases that suggest the first step may be unnecessary in certain contexts).

The state policy requirement "is satisfied when a private institution 'enforce[s] a state-imposed rule' instead of 'the terms of its own rules.'" *Children's Health Def.*, 112 F.4th at 754 (quoting *O'Handley*, 62 F.4th at 1156). This requirement "ensures that the alleged deprivation is fairly attributable to a state policy." *Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir. 1989).

Here, the proposed Section 1983 claim alleges that Plaintiff's constitutional rights were violated by IFCH, Bloxham, and Thompson when she was involuntarily committed on April 18, 2023. (Dkt. 35, Ex. 2 ¶¶ 119-132). Plaintiff argues IFCH, Bloxham, and Thompson have affirmatively asserted that they were state actors by arguing they had the authority to take the actions they took because they sought and obtained a court order allowing them to involuntarily hold Plaintiff. (Dkt. 35-1, 43). Thus, Plaintiff contends,

they are "legally bound" to their prior position that they sought and used the authority of the state to involuntarily hold her based on the civil commitment form and state order, and are estopped from now arguing they are not state actors because they "shrouding themselves in state authority." (Dkt. 35-1, 43).

At the same time, however, Plaintiff disputes the validity and existence of the state court order and maintains that IFCH, Bloxham, and Thompson failed to comply with the state's procedure for an involuntary commitment and had no basis to involuntarily hold her. (Dkt. 35-1 at 6; Dkt. 35, Ex. 2 ¶¶ 51, 58-60). The factual allegations underlying the proposed Section 1983 claim are that the constitutional deprivation was caused by private actors engaged in private conduct that was <u>not</u> authorized, required, or governed by any state rule, policy, or scheme, rather than the exercise of any right or privilege created by the state. *Wright v. Serv. Employees Int'l Union Loc. 503*, 48 F.4th 1112, 1121-1122 (9th Cir. 2022).

A private actor's misuse or violation of a state statute "does not describe conduct that can be attributed to the state," and, therefore, cannot be the basis for holding private actors liable under Section 1983. *Lugar*, 457 U.S. at 940-941. Therefore, allegations that IFCH, Bloxham, and Thompson wrongfully involuntarily committed Plaintiff by failing to follow the legally required procedure and that dispute the existence and validity of any court order, do not evidence conduct fairly attributable to any state policy or rule. *Collins*, 878 F.2d at 1152-1153 (recognizing actions taken by a private party that are contrary to the relevant state policy or rule are not conduct fairly attributed to the state); *Lugar*, 457 U.S. at 940 (distinguishing a claim based on private misuse of the state statute, which was

ORDER - 16

found to not be state action, from a claim challenging the state statute's procedural scheme which was determined to be the product of state action). Thus, the proposed Section 1983 claim is not based on factual allegations that the deprivations of Plaintiff's constitutional rights were the result of the exercise of a state rule, right, or privilege. For these reasons, the Court finds the step one state policy requirement is not satisfied. Even if step one was satisfied, the Court further finds the second step is not met for the reasons that follow.

At the second step, the state actor requirement, the plaintiff must show that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar*, 457 U.S. at 923. There are at least four tests used to determine whether a party was a state actor: "(1) the public function test, (2) the state compulsion test, (3) the nexus test, and (4) the joint action test." *O'Handley*, 62 F.4th at 1157; *see also Rawson*, 975 F.3d at 747. "These tests are interrelated, and they are designed to answer the same key question: whether the conduct of a private actor is fairly attributable to the State." *Ochoa*, 48 F.4th at 1109 (citation omitted). Satisfaction of one test is sufficient to establish state action, so long as there is no countervailing reason against attributing the private activity to the government. *Rawson*, 975 F.3d at 747; *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-296 (2001).

This is a fact-intensive inquiry and "'a matter of normative judgment, and the criteria lack rigid simplicity.'" *Rawson*, 975 F.3d at 747 (quoting *Brentwood*, 531 U.S. at 295). "'[N]o one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some

countervailing reason against attributing activity to the government." *Id.* "At bottom, the inquiry is always whether the defendant has 'exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of the state.'" *Id.* at 748 (quoting *West*, 487 U.S. at 49); *see also Ochoa*, 48 F.4th at 1109 (The state action tests "are designed to answer the same key question: whether the conduct of a private actor is fairly attributable to the State.").

Here, Plaintiff asserts IFCH, Bloxham, and Thompson are state actors because: (1) they exercised powers traditionally held by the State, (2) they performed actions under which the State owes constitutional obligations to those affected, (3) the State authorized or approved the actions, and (4) they engaged in private conduct affirmatively commanded by State protocols. (Dkt. 35, 43). The entity Defendants and intervenors dispute each of Plaintiff's arguments and maintain they are not state actors. (Dkt. 39, 42). The Court finds as follows.

### i.    Public Function Test

"The public function test is satisfied only on a showing that the function at issue is 'both traditionally and exclusively governmental.'" *Rawson*, 975 F.3d at 748 (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (citation omitted)). Relying on *Rawson*, Plaintiff argues IFCH, Bloxham, and Thompson invoked Idaho's involuntary commitment statute as their authority to detain her based on the traditional and exclusive state functions of *parens patriae* power and police power. (Dkt. 35 at 4-5). Thus, Plaintiff reasons, the resulting deprivations of her constitutional rights to liberty, refusal of

treatment, and due process, were functionally caused by IFCH and the intervenors' exercise of the state's traditional and exclusive civil commitment powers. (Dkt. 35 at 6).

However, contrary to Plaintiff's argument, numerous courts have held that involuntary commitment by a private hospital and private doctors is not an exclusive and traditional government function. *See e.g.*, *Castillo v. Yuma Cnty. Bd. of Supervisors*, 2025 WL 2879749, at *4 (D. Ariz. Oct. 9, 2025) (citing cases); *Douglass v. HonorHealth*, 2024 WL 4475093, at *3 (D. Ariz. Oct. 11, 2024). While not binding, the Court finds the reasoning of those courts instructive here and likewise concludes that involuntary commitment by purely private actors is not an exclusive state function. To be sure, protecting citizens and the public are state functions and powers, but they are not exclusively so. *Id.* Particularly where, as here, the allegations are that only private actors were involved with initiating and obtaining the involuntary commitment that gives rise to the constitutional deprivations. *See Jensen v. Lane Cnty.*, 222 F.3d 570, 574 (9th Cir. 2000) ("When purely private actors obtain the help of a private physician to bring about the involuntary admission and detention of an allegedly mentally ill person for psychiatric examination, courts that have addressed this scenario in the § 1983 context have held that there is no state action.").

In *Jensen* the Ninth Circuit found the defendant psychiatrist - a private contractor hired by the state to examine persons brought into mental health treatment facilities by police officers - to be a state actor because of the close joint nexus between the provider and the state. Notably, the decision in *Jensen* distinguished its facts from circumstances,

such as those present in this case, involving "purely private actors" and "private physicians" where courts have found there is no state action. *Id.*

Further, the decision in *Rawson*, is not dispositive of the outcome here. In *Rawson*, the Ninth Circuit found the plaintiff's involuntary commitment and treatment beyond the initial 72-hour emergency evaluation period was an exercise of the state's *parens patriae* and police powers to protect the health and safety of persons suffering from mental health disorders and the public, and was <u>a factor</u> weighing in favor of finding the defendants acted under color of state law. *Rawson*, 975 F.3d at 752. The *Rawson* court went on to analyze and conclude that all of the state actor tests weighed in favor of finding the defendants acted under the color of state law given the circumstances in that case. For the reasons discussed more fully below, the Court finds the facts and reasoning in *Rawson* are distinct from this case and that the circumstances presented here do not evidence that IFCH, Bloxham, and Thompson "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer was clothed with the authority of state law.'" *Rawson*, 975 F.3d at 748 (quoting *West*, 487 U.S. at 49). Accordingly, this test weighs against finding the state actor requirement has been met.

### ii.    Joint Action and Government Nexus Test

"The close nexus and joint action tests may be satisfied where the court finds 'a sufficiently close nexus between the state and the private actor 'so that the action of the latter may be fairly treated as that of the State itself,' or where the State has 'so far insinuated into a position of interdependence with the [private party] that it was a joint

participant in the enterprise.'" *Rawson*, 975 F.3d at 748 (quoting *Jensen*, 222 F.3d at 575–58 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350, 357–58 (1974)).

Joint action can be shown either "by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *O'Handley*, 62 F.4th at 1159 (citation and marks omitted). A joint action exists where the state "significantly involves itself in the private parties' actions and decision making" through a "complex and deeply intertwined process." *Rawson*, 975 F.3d at 753. Similarly, the state nexus test considers whether "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood*, 531 U.S. at 295. There are two versions of the nexus test: (1) the less common version asks whether there is "pervasive entwinement" between the public institutions or officials and functioning of the private actor; and (2) a version asking whether government officials have "exercised coercive power or [have] provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *O'Handley*, 62 F.4th at 1157-1158 (citing *Brentwood*, 531 U.S. at 298; *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

Here, there are no allegations in the proposed second amended complaint of any participation or involvement by the state in Plaintiff's involuntary commitment. (Dkt. 35, Ex. 2). Plaintiff was brought to the private hospital, by a private individual, and seen by private treatment providers. Plaintiff's reliance on *Rawson* is unpersuasive, as the facts and circumstances in that case are materially different.

In *Rawson*, the court observed that the sheriffs' actions detaining and placing the plaintiff in protective custody and on a mental health hold, and transporting him to a hospital, which was located on property leased from the state, "triggered a series of events governed by Washington's Involuntary Treatment Act," including an evaluation by a county designated provider who filed the petition for a 72-hour involuntary commitment and an "outsized role" by the county prosecutor in the duration of the detention. *Rawson*, 975 F.3d at 745-746, 753-754, 756.

In contrast, the facts alleged in this case are that no state official initiated the hold or was involved in Plaintiff's transportation and treatment at the hospital, and neither the private hospital nor the private treatment providers had any ties, communication, or relationship to the state. Indeed, the proposed second amended complaint alleges that law enforcement was called by HR on April 18, 2023 to take Plaintiff to the emergency room for a psychiatric hold, but the officers <u>declined</u> to do so because they "did not have enough to make her go." (Dkt. 35, Ex. 2 ¶¶ 32, 34). The allegations are that Plaintiff arrived at IFCH in a private vehicle, driven by a private individual, to a private hospital, and was seen by private treatment providers. Plaintiff alleges that at IFCH "[a] healthcare worker" and "IFCH staff" informed her that she was going to be admitted to the behavioral health unit, and that she was not allowed to refuse care or leave because she was under a 24-hour psychological hold, and that Bloxham refused to lift the hold. (Dkt. 35, Ex. 2 ¶¶ 42, 46, 50). Taking all of these allegations as true, there are no facts alleged that evidence any state involvement in Plaintiff's mental health commitment.

Further, the proposed second amended complaint contains no allegation or assertion of Idaho's statutory scheme or the exercise of any exclusive or traditional state powers by IFCH, Bloxham, or Thompson. (Dkt. 35, Ex. 2). The only allegations directed at Bloxham and Thompson are the conclusory statements that both physicians "supervised her care," and that Bloxham told Plaintiff's provider the hold was being lifted, but then later told Plaintiff he would not lift the hold because a "psychological commitment was the best thing" in his experience. (Dkt. 35, Ex. 2 ¶¶ 8, 9 44, 50). The only involvement of IFCH apparent in the complaint was that of being the private hospital where the events in question occurred. It is possible that IFCH employed some or all of the staff or providers that Plaintiff broadly alleges were involved in her treatment. However, the complaint does not actually allege that the "staff" and "providers" who are the subject of the allegations were employed by IFCH.

The state court order is the only state action or involvement referred to in the proposed second amended complaint. (Dkt. 35, Ex. 2 ¶ 59). However, Plaintiff disputes the existence and validity of the state court order. (Dkt. 35, Ex. 2 ¶¶ 51, 58). The proposed second amended complaint alleges that "[n]o case obtaining a Court order associated with detaining Plaintiff based upon a psychological hold exists or was ever opened" and the "providers" who place Plaintiff on the hold failed to follow the legally required procedure for an involuntary commitment. (Dkt. 35, Ex. 2 ¶¶ 51, 58, 60). Thus, Plaintiff's own allegations negate the state's involvement through the issuance of a court order. And, as discussed further below, the arguments of IFCH, Bloxham, and Thompson relevant to the state court order do not show otherwise.

Even if a state court order was issued, it does not evidence the kind of significant involvement or joint participation by the state and private actors needed to establish a joint action or nexus in this case. There are simply no facts alleged that IFCH, Bloxham, and Thompson conspired, participated, were coerced, or had any joint participation with the state regarding Plaintiff's mental health hold. Indeed, the are no allegations at all of any involvement or participation by the state in Plaintiff's involuntary commitment. (Dkt. 35, Ex. 2). As such, the case is distinguishable from *Rawson* where the state and private actors were significantly more entangled in the process at issue – e.g., the initial detention and commitment was by police and, thereafter, the county prosecutor played an "outsized role in the duration of [the] detention." *Rawson*, 975 F.3d at 745, 754. Because there are no alleged facts of any joint action or nexus between IFCH, Bloxham, Thompson, and the state, these tests weigh against finding the state actor requirement has been met.

### iii.    Government Compulsion Test

"Governmental compulsion or coercion may exist where the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *Rawson*, 975 F.3d at 748 (quoting *Blum*, 457 U.S. at 1004). Compliance with generally applicable laws is not sufficient to convert private conduct into state action, nor is the fact that private actors are subject to penalties for violating state regulations. *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1013-1014 (9th Cir. 2020) (citing *Sutton v. Providence St. Joseph Med. Cntr.*, 192 F.3d 826, 841 (9th Cir. 1999) ("[G]overnmental compulsion in the form of a generally applicable law, without more, is [not] sufficient to deem a private entity a governmental

actor."); and *Blum*, 457 U.S. at 1010). Rather, for actions by private parties to be deemed state actions, the government must command a particular result such that the private parties are left with no choice of their own. *Id.* at 1014 (citing *Blum*, 457 U.S. at 1010) (finding no state action where government regulations did "not dictate the decision to discharge or transfer *in a particular case*") (emphasis added)); *see also Douglass*, 2024 WL 4475093, at *4.

Here, aside from the bare conclusory statements in the proposed Section 1983 claim itself, there are no facts alleged in the proposed second amended complaint of any government compelled action or result, or that IFCH, Bloxham, and Thompson acted at the direction or command of the state. (Dkt. 35, Ex. 2 ¶¶ 120-126). The facts alleged are that Bloxham and Thompson supervised Plaintiff's case in the emergency department at IFCH, Bloxham spoke with Plaintiff's treating doctor, Bloxham told Plaintiff the hold would not be lifted, that unidentified "providers" and "staff" at IFCH informed Plaintiff that she was on a mental health hold and being admitted to the Behavioral Health Unit, Plaintiff was not allowed to leave or see her own treatment providers, and Plaintiff's complaints and medical issues were not treated. (Dkt. 35, Ex. 2 ¶¶ 8, 9, 42, 44-50). Again, Plaintiff alleges they acted in violation of state protocols and applicable standards of care, not because they were compelled by the state. (Dkt. 35, Ex. 2 ¶¶ 40-41, 49, 51, 56-58, 60-61). Because the proposed second amended complaint does not allege facts of any government compulsion or coercion, this test weighs against finding IFCH, Bloxham, and Thompson were state actors.

Plaintiff's contentions that the defenses asserted by IFCH, Bloxham, and Thompson "shrouding" themselves in the authority of the state does not evidence that their actions were compelled or coerced by the state. (Dkt. 35, 43). IFCH, Bloxham, and Thompson have not relied on the state court process or order as authority to place Plaintiff on an initial temporary involuntary mental health hold, as Plaintiff contends. Rather, they argue that Plaintiff's temporary involuntary hold was initiated consistent with the legal requirements, which did not involve state action or compulsion. Indeed, IFCH, Bloxham, and Thompson argue that they were not involved in the decision to initiate Plaintiff's involuntary commitment, as evidence by the commitment form signed by a physician's assistant. (Dkt. 9, 10, 26, 42-1, 39). As to the state court order, IFCH, Bloxham, and Thompson argue that no court order was required to place Plaintiff on the temporary hold, and that Plaintiff's treatment providers made an independent initial determination to place her on a temporary, involuntary mental health hold and, thereafter, the state court independently determined she should be further evaluated. (Dkt. 33 ¶ 38); (Dkt. 9, 42-1); (Dkt. 10-1 at 12-13) ("[I]t is clear that both the Plaintiff's treating physicians, and a court of competent jurisdiction, independently determined that the Plaintiff was 'gravely disabled due to mental illness or imminently dangerous' and should be further evaluated in a behavioral health unit."); (Dkt. 39). These defenses asserted in response to Plaintiff's claims that the state's mental health commitment process was not followed, do not show government compulsion or coercion. Rather, their arguments are that there were two independent determinations – the private providers decision to initiate

the temporary hold and the state court order to continue the hold.[6] Even if their

arguments that they complied with the state mental commitment process were enough to

show government compulsion, that alone does not satisfy the state actor requirement. *See*

*Sutton*, 192 F.3d at 841 ("[G]overnmental compulsion in the form of a generally

applicable law, without more, is [not] sufficient to deem a private entity a governmental

actor."). This is particularly true where, as here, there is no nexus or joint action between

the private actors and the state.

### iv.    Conclusion

Having carefully considered the submissions relevant to this motion and the entire

record herein, the Court will deny the motion to amend. While mindful that leave to

amend is freely given and that challenges to the merits of a proposed pleading are

generally considered after the amended pleading is filed, the Court finds in its discretion

that allowing leave to amend is not appropriate or warranted here because the entity

Defendants and intervenors have shown that the Section 1983 claim proposed to be added

is futile for the reasons discussed above. The conduct alleged to have violated Plaintiff's

constitutional rights was not fairly attributable to any state policy. And, each of the four

state actor tests weigh heavily against finding IFCH, Bloxham, and Thompson were state

actors, as there are no facts alleged that show their conduct or involvement, if any, with

Plaintiff's mental health commitment on April 18, 2023 can fairly be said to have been

---

[6] The Court does not find that any exercise of independent medical judgment by providers insulates them from a finding of state action. *Rawson*, 975 F.3d at 750. Rather, the Court is recognizing the arguments of IFCH, Bloxham, and Thompson that the decision to initiate the temporary hold was made without any state involvement. At bottom, the Court's finding herein is that there are no allegations that the purely private actors in this case exercised any right or privilege created by the state such that their actions can fairly be said to be a state actor.

that of a state actor or made only because they were clothed with the authority of the state. Because futility is alone a proper basis for not granting leave to amend, the Court will deny the motion. *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015).

Further, the Court finds there are countervailing considerations that weigh against allowing amendment. The Section 1983 claim could have been raised sooner. While not undue delay, Plaintiff could have sought leave to amend before filing the first amended complaint given she knew the bases for the claim at the conclusion of the motions to dismiss. Understanding Plaintiff's contention that the first amended complaint was limited to the claims allowed in the Order on the motions to dismiss, still the more efficient and expeditious process would have been for Plaintiff to request leave to add the proposed Section 1983 claim before filing the first amended complaint rather than the "unique" piecemeal approach taken here. (Dkt. 35-1 at 10; Dkt. 43). Further, there is some prejudice to the entity Defendants and intervenors in having to relitigate the viability of claims and parties previously dismissed if the second amendment were allowed. While these circumstances do not individually justify denying leave to amend, when considered in conjunction with the strong showing of futility found herein, they add greater weight to the Court's decision to exercise its discretion and deny the motion for leave to amend.

### 3.  Motion for Reconsideration

Plaintiff moves for reconsideration of the dismissal of the state law tort claims, arguing the claims should be reincorporated under the Court's supplemental jurisdiction

based on the addition of the proposed Section 1983 claim. (Dkt. 35-1). The entity Defendants and intervenors oppose the motion. (Dkt. 39, 42-1).

The Court finds Plaintiff has failed to establish any of the grounds for reconsideration provided under Rule 59(e). *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) ("Under Rule 59(e), a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law."). Most notably, the basis underlying Plaintiff's request for reconsideration of the state law claims – the addition of a new claim under Section 1983 - does not exist given the Court's ruling above on the motion to amend. Accordingly, the motion for reconsideration is denied.

**ORDER**

THEREFORE IT IS HEREBY ORDERED as follows:

1)  Plaintiff's Motion for Leave to Amend and for Reconsideration (Dkt. 35) is
    **DENIED**.

2)  The Motion to Intervene (Dkt. 42) is **GRANTED**.



DATED: March 2, 2026

_____
Honorable Debora K. Grasham
United States Magistrate Judge